## TREAT v. ROGERS.

Circuit Court of Appeals, Eighth Circuit.
October 9, 1929.

No. 8493.

L. B. Smead, H. P. Smead, and Robert C. Knox, all of El Dorado, Ark., for appellant.

Syd Reagan, Neill C. Marsh, C. W. McKay, and Tom Marlin, all of El Dorado, Ark., for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and MARTINEAU, District Judge.

VAN VALKENBURGH, Circuit Judge. This is a suit in equity to set aside a mineral deed given by Richard Pumphrey, a colored man, to appellant, upon 270 acres of land in Union county, Arkansas. Contemporaneously therewith appellant procured from Pumphrey, for the Ohio Oil Company, a corporation for which appellant was agent, an oil and gas lease covering the same property, which constituted all the land owned by Pumphrey. The mineral deed in suit bears date December 30, 1926, but was actually signed on the 4th day of January, 1927, and the consideration named and paid therefor was $500. If sustained, it gives to Treat, appellant herein, one-half of the royalties accruing under the oil and gas lease granted to the Ohio Oil Company, for which appellant was agent.

The oil lease itself is not in evidence, but it does not appear that its validity is contested, nor that complaint is made of its terms. It appears from the testimony that Richard Pumphrey was, at the time the deed was given, a colored man of advanced years. His age is placed by witnesses with reasonable certainty at between 80 and 90 years. He was admittedly ignorant, unable to read or write, and because of age, and feebleness of mind and body, his son and daughter had been managing and transacting for him all matters of business. In December, 1927, he was officially declared to be a person of un-

sound mind by the probate court of Union county, Arkansas, and one W. F. Rogers was duly appointed guardian of his person and estate. In the latter part of December, 1926, appellant, accompanied by one J. R. Ramsey, a notary public, came to the home of Pumphrey, and sought to obtain from him one-half of the oil, gas, and other minerals lying in, on, and under the lands heretofore mentioned, for a consideration of $500. The Ohio Oil Company already held, by assignment from one Beecher, an oil and gas lease, executed in 1919, granting the right to drill upon this land for oil or gas for a period of 10 years thereafter. This lease is said to have contained a misdescription. The Ohio Oil Company desired to secure a new lease, for the purpose of correcting the description, and of extending the terms and period of operation, and for some time prior to the transactions here involved appellant had been engaged in procuring oil and gas leases for the Ohio Oil Company upon lands in this vicinity, and, among others, sought to obtain the new lease in question from Pumphrey.

On the occasion of this visit to the home of Pumphrey, in the latter part of December, 1926, Martha, the daughter of Richard Pumphrey, interposed objection to these negotiations; told Treat that her father was infirm in mind and body, and unable to protect himself and his interests in matters of such importance; and that the consideration offered was inadequate. She requested that Treat refrain from his efforts to purchase her father's mineral rights. Thereupon Pumphrey refused to execute the mineral deed, and Treat and Ramsey departed. A few days later appellant discovered Richard Pumphrey at work in a field, apart from his children. He at once induced one William Pumphrey, a white man, whose grandfather had once owned Richard Pumphrey, when a slave, and in whom Richard Pumphrey had great confidence, to go with him to the field, and to persuade Richard Pumphrey to execute the oil and gas lease and the mineral deed in question. William Pumphrey states that he only passed upon the lease, which seems unobjectionable, and that the mineral deed was brought up as an unexpected incident. However, it is evident that the presence of William Pumphrey inspired a confidence that resulted in the execution of both instruments, in the absence of Richard Pumphrey's children, and despite the opposition which their advice and cautioning had theretofore created. It appears beyond question that appellant was apprised and well aware of the mental incompetency of the grantor in this mineral deed.

The premises considered, the guardian of Richard Pumphrey prayed that, upon return of the sum of $500, paid by appellant therefor, the mineral deed, of date December 30, 1926, be canceled, set aside, and for naught held, that the title of Richard Pumphrey to. said property be quieted and confirmed in him, and for all other proper and equitable relief. The finding of the chancellor was in his favor and this appeal followed.

On its face the transaction smacks of fraud and overreaching, and casts upon the appellant in equity the burden of establishing its fairness and the absence of inequitable conduct. Under the evidence, the finding of the chancellor that the payment was inadequate was justified. It was known that the Ohio Oil Company was about to drill wells in active development of the property. This was concealed from the lessor and grantor in the deed. Apart from the question of adequacy, we think it is foreign to proper dealing in the relationships disclosed that appellant, the agent of the Ohio Oil Company, should have taken this advantage of an ignorant colored man of advanced years, and obviously of feeble mental powers. In less than a year thereafter he was formally adjudged incompetent. Whether this mineral deed was taken for the benefit of the Ohio Oil Company, or for that of appellant himself, is immaterial. The evidence is ample to sustain the finding of the chancellor, and in the absence of plain error of law, or obvious mistake of fact, his finding should not be disturbed.

The decree is affirmed.